IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

A.W.,[1]

        Plaintiff,

v.                                                       Case No. 19-2271-JWB

ANDREW M. SAUL,
*Commissioner of Social Security,*

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 8, 11, 14.) The Commissioner's decision is REVERSED and REMANDED for the reasons set forth herein.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that he cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of

performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

**II. Background and Procedural History**

Plaintiff applied for disability insurance benefits on January 8, 2018. (Tr. at 13.) In his application, Plaintiff alleged disability beginning July 15, 2017. Plaintiff's claims were administratively denied both initially and upon reconsideration, prompting him to request a hearing before an Administrative Law Judge (ALJ). A hearing was held in December 2018 and an unfavorable decision was issued February 4, 2019. Plaintiff exhausted his administrative remedies and has now appealed to this court.[2]

Plaintiff is 35 years old and has a nursing degree. Plaintiff is a veteran who was deployed to Iraq and injured in an IED explosion. Plaintiff became a nurse to help other veterans. (Tr. at 45-46.) Plaintiff testified that he voluntarily resigned his position at the Topeka VA hospital after he felt like he was "losing control." (*Id.* at 48.)

At step one, the ALJ found Plaintiff had not been engaged in substantial gainful activity since the onset date. At step two, the ALJ found Plaintiff suffered from the following severe impairments: post-traumatic stress disorder ("PTSD"), major depressive disorder, anxiety disorder, traumatic brain injury ("TBI"), alcohol use disorder, migraine headaches, and hearing

---

[2] Plaintiff states that he filed a new application in February 2019 and was approved. Therefore, at issue in this appeal is the period from July 15, 2017, to February 4, 2019. (Doc. 8 at 2.)

3

loss. (*Id.* at 15.) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (*Id.* at 16-18.) Relevant to this appeal, the ALJ determined that Plaintiff's mental impairments did not meet the criteria of listing 12.15, trauma and stressor-related disorders. The ALJ stated that Plaintiff's mental impairments did not cause two "marked" limitations or one "extreme" limitation in mental functioning as required to meet the paragraph B criteria. With respect to the paragraph C criteria for listing 12.15, the ALJ determined that the Plaintiff has not shown that his impairments imposed such significant limitations that he would have only a marginal ability to adapt to work. (*Id.* at 17.)

The ALJ next determined that Plaintiff has the RFC to perform a full range of work at all exertional levels with some physical limitations, including that he should avoid loud background noise, excessive vibrations, and hazardous machinery. With respect to Plaintiff's mental RFC, the ALJ determined that Plaintiff can understand, remember and carry out unskilled, non-detailed, routine, repetitive tasks. Plaintiff should have no contact with the public and no more than occasional contact with coworkers. Plaintiff can make simple work-related decisions and adapt to simple changes. Plaintiff cannot perform high production rate jobs. (*Id.* at 18.)

In determining Plaintiff's RFC, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, but Plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms were not fully supported based on the medical evidence discussed in the decision. (*Id.*)

After formulating the RFC, the ALJ determined that Plaintiff could perform his past work as a car washer. At step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy in significant numbers that he could perform.

(Tr. at 24.) The ALJ sought the opinion of a vocational expert to determine what jobs Plaintiff could perform. The vocational expert testified that Plaintiff would be able to perform the following positions: hand packer (DOT 920.587-018); laundry worker (DOT 361.685-018); and industrial cleaner (DOT 381.687-018). (*Id.* at 24.)

Plaintiff asserts that the ALJ erred in not finding that his severe impairments met listing 12.15, in formulating the RFC, in evaluating the medical opinions, in determining that Plaintiff could perform his past work, and in finding that he could perform jobs that existed in significant numbers in the national economy. The court will address the arguments in turn.

### III. Analysis

#### A. Listing 12.15

Plaintiff argues that the ALJ erred in finding that his impairments did not meet or medically equal listing 12.15. The "Listing of Impairments" describes certain impairments the Commissioner considers disabling. 20 C.F.R. § 404.1525; *see also* 20 C.F.R., Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If a claimant's condition "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). The claimant bears the burden of demonstrating, through medical evidence in the record, that his impairments meet the specified criteria. *Riddle v. Halter*, 10 F. App'x. 665, 667 (10th Cir. 2001) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). The impairment must meet all of the listing criteria to qualify. *Zebley*, 493 U.S. at 530.

The ALJ determined that Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.15 because the medical evidence did not satisfy the "paragraph B" or the "paragraph C" criteria. (Tr. at 17.) Plaintiff argues the evidence shows that all of the listing criteria have been satisfied. To satisfy listing

5

12.15, Plaintiff's mental disorders must satisfy the requirements of both paragraphs A and B or the requirements of both paragraphs A and C.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders.  The ALJ did not discuss the requirements of paragraph A, but this was not necessary unless Plaintiff had established that he met the criteria of paragraph B and/or C.  Therefore, the court will proceed to determining whether the findings regarding paragraphs B and C are supported by substantial evidence.  If so, the court need not evaluate the paragraph A criteria or consider remand so the ALJ may do so.

To satisfy the paragraph B criteria under the listing, Plaintiff's mental disorder(s) "must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."  *Id.*  To satisfy the paragraph C criteria, Plaintiff's mental disorder(s) "must be 'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2."  *Id.*  The C1 and C2 criteria are as follows:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*Id.* at 12.15 Trauma- and stressor-related disorders.

With respect to the paragraph B criteria, the ALJ determined that Plaintiff had mild limitations in adapting and managing oneself and had only moderate limitations in the remaining three mental functioning categories.  (Tr. at 17.)  The ALJ determined that Plaintiff only had moderate limitations in understanding, remembering, or applying information, in that the evidence in the record showed that Plaintiff is generally able to learn, recall, or use information on an

6

independent and sustained basis. The ALJ found that Plaintiff had moderate difficulties interacting with others based on Plaintiff's statements and the record, but that Plaintiff is capable of interacting independently, appropriately, effectively, and on a sustained basis. The ALJ noted that Plaintiff would have some limitations in interacting and relating with co-workers and the public, but those limitations have been accounted for in the RFC. With respect to concentration, persistence, or maintaining pace, the ALJ determined that Plaintiff had moderate difficulties as there is evidence in the record, which includes Plaintiff's statements, that Plaintiff has some difficulty staying on task. (*Id.*)

Initially, Plaintiff notes that the ALJ did not cite to the record in his discussion of step three. (*Id.* at 18.) However, as noted by the Commissioner, the Tenth Circuit has held that an ALJ's analysis of the medical record at other steps can support the findings at step three. *Fisher-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). As discussed, *infra*, the ALJ extensively reviewed the record.

The ALJ noted that Plaintiff complained of difficulty interacting with others, paranoid thoughts, increased irritability, rageful outbursts, and limited energy. (Tr. at 20.) The record, however, showed that Plaintiff's mental status examinations were "essentially unremarkable." (*Id.*) During the time period at issue, Dr. Bradshaw, Plaintiff's medication manager, "consistently observed the claimant had good hygiene and eye contact, a normal thought process, good insight and judgment, and grossly intact attention and concentration although his rate of speech was decreased and he had a sad mood." (*Id.*) In group therapy, Plaintiff "exhibited a euthymic mood, shared easily and was able to provide encouragement and support to other veterans." (*Id.*) The ALJ found that these clinical signs and findings are inconsistent with "more than moderate psychological limitations." (*Id.*) The ALJ discussed Dr. Bradshaw's opinions that Plaintiff has

7

moderate to extreme limitations in the paragraph B criteria. However, the ALJ found that Dr. Bradshaw's opinion was not persuasive in that it was inconsistent with Plaintiff's conservative treatment history and unsupported by Dr. Bradshaw's own clinical findings, which were generally unremarkable.[3] The ALJ also noted that Plaintiff's treatment history was inconsistent with a disabling mental impairment as he has not required inpatient psychological treatment, emergent treatment, or crisis management. (*Id.*)

Dr. Fallon, who evaluated Plaintiff for the VA, determined Plaintiff was totally occupationally and socially impaired. The ALJ did not find the opinion persuasive as the examination was performed due to Plaintiff's request for an unemployability finding, it was inconsistent with Plaintiff's wide range of activities, and it was unsupported due to unremarkable clinical signs and findings. (*Id.* at 22.)

The ALJ also reviewed Plaintiff's daily activities and determined that they did not support a determination that all basic work activity would be precluded. Plaintiff reported that he could manage his money, care for his son every other weekend, take care of his dogs, take short shopping trips, cook, pick up after himself, drive, play frisbee golf, and mushroom hunt. (*Id.* at 21.)

Plaintiff argues that the ALJ's findings as to his limitations on step three were erroneous because there is evidence in the record that supports that he has an extreme limitation in interacting with others and two marked limitations in remembering and applying information and in concentration, persistence, and maintaining pace. (Doc. 8 at 24.) In making this argument, Plaintiff cites to the opinion evidence of Dr. Bradshaw and Dr. Fallon. The ALJ determined that those opinions were not persuasive, however, as they were not supported by the mental status

---

[3] The regulations regarding medical opinions were revised on March 27, 2017. Because this claim was filed after March 27, 2017, the new regulations apply. After March 27, 2017, the ALJ does not weigh opinions but evaluates how persuasive the opinion is. *See* 20 C.F.R. § 404.1520c.

examinations throughout the relevant period and were inconsistent with Plaintiff's daily activities. Plaintiff does not cite to objective medical evidence in the record in support of the extreme or marked limitations. *Bates v. Barnhart*, 222 F. Supp. 2d 1252, 1258 (D. Kan. 2002) (The step three "determination of medical equivalency…must be based solely on medical evidence," such as symptoms, signs, and laboratory findings.)

The court finds that the ALJ's determination regarding the paragraph B criteria is supported by substantial evidence. Plaintiff further argues that the ALJ erred in finding that he did not meet the paragraph C criteria. The ALJ determined that Plaintiff failed to show that his mental disorder results in a minimal capacity to adapt to changes in the environment or to demands that are not already a part of Plaintiff's daily life. (Tr. at 17.)

In support of his argument that the ALJ erred in this determination, Plaintiff cites again to Dr. Bradshaw's conclusion that Plaintiff had met the criteria. (Doc. 8 at 24) (citing to Tr. at 762.) Again, Plaintiff does not cite to any medical evidence in the record that establishes that he has met the paragraph C criteria and the ALJ discounted the opinion for the reasons discussed herein. Therefore, the court finds that the ALJ's finding regarding step three is supported by substantial evidence.

### B. RFC Determination and Weighing Opinions

Plaintiff argues that the ALJ erred in making the RFC determination and evaluating the opinions in the record. The court will address each argument in turn.

#### i.    Migraine Headaches

Plaintiff argues that the ALJ failed to discuss statements he made in a December 2016 exam and failed to accommodate his migraines in the RFC. In December 2016, Plaintiff was evaluated for TBI by Dr. Glatt at the VA. (Tr. at 402.) The ALJ noted that "during a compensation

9

pension examination in December 2016, he reported his headaches had actually improved from his worst point in 2005 and that they were relieved with sleep, a TENS unit, and Ibuprofen." (*Id.* at 19.)  Plaintiff asserts the ALJ erred by failing to discuss his statements to Dr. Glatt during the examination regarding the severity of his headaches.  Plaintiff, however, cites no authority for this argument.  Clearly, the ALJ reviewed this record.  "The ALJ is not required to discuss every piece of evidence" in the record.  *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (quotation and citation omitted).  Therefore, the ALJ did not err in failing to discuss all of Plaintiff's subjective complaints that he listed during the examination.

The ALJ determined that Plaintiff's migraine headaches were not as intense or as frequent as alleged because Plaintiff has not required intensive treatment for the migraines and has not presented to the emergency room.  (*Id.* at 19.)  The ALJ also stated that Plaintiff's daily activities are inconsistent with disabling limitations.  The court finds that the ALJ provided legitimate reasons for discounting Plaintiff's subjective complaints and supported those reasons with the record.  *See Barnhill-Stemley v. Colvin*, 607 F. App'x 811, 817 (10th Cir. 2015).

Plaintiff further argues that the ALJ did not accommodate the migraines in his RFC and that the ALJ should have provided a limitation for him to lie down in the dark and to avoid computers.  (Doc. 8 at 27.)  The ALJ stated that he accommodated the migraines in the RFC, but that Plaintiff's limited treatment history and his own reports suggested that the headaches do not preclude all work activity.  In discussing the migraines, the ALJ stated that Plaintiff suggested that the migraines were triggered by environmental factors and stress.  The RFC accommodates the migraines by precluding all loud background noise, excessive vibrations, and high production rate jobs. The ALJ further stated that Plaintiff's subjective complaints do not warrant any additional limitations.  (Tr. at 19.)  In arguing that the ALJ failed to add certain limitations to the RFC,

10

Plaintiff merely cites to his own statements regarding the migraines. As discussed, the ALJ clearly discounted Plaintiff's subjective complaints when formulating the RFC. This was appropriate. Therefore, the failure to include limitations based on Plaintiff's subjective complaints was not error. The record supports a finding that the ALJ accommodated Plaintiff's migraine headaches.

### ii. TBI

Plaintiff appears to challenge the ALJ's discussion of his TBI, but his argument is not clear. Plaintiff states that he "has been diagnosed with a TBI, but the ALJ concluded, without any support, it was not disabling since his symptoms of TBI and his other mental impairments overlapped." (Doc. 8 at 28-29.) The ALJ stated that Plaintiff was diagnosed with a TBI but that the examiner in December 2016 "could not distinguish between mild TBI and symptoms associated with PTSD." (Tr. at 21.) (citing Exh. 2F.) The ALJ also stated that in October 2019, the examiner observed that "no treatment, outside his current mental health treatment, was available for his alleged TBI." (*Id.*) (citing Exh. 22F.) The ALJ concluded that the limited treatment and inability to separate TBI from his other impairments suggested that the TBI was not disabling.

Plaintiff fails to identify how this analysis was erroneous. Plaintiff does not cite to any medical records that would support a finding that the ALJ erred in his determination. The ALJ's finding that the TBI is not disabling is supported by the record.

### iii. Daily Activities

Plaintiff asserts the ALJ erred in assessing his credibility based on his daily activities. Plaintiff states that the ALJ determined that his mental impairments would not preclude all basic work or result in marked limitations due to his daily activities. Plaintiff cites to *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993), in support of the proposition that "sporadic

performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." (Doc. 8 at 29.) While Plaintiff has correctly stated the law, the ALJ did not solely rely on Plaintiff's daily activities to determine that Plaintiff did not have a disabling mental impairment.

The ALJ extensively discussed the medical evidence and Plaintiff's treatment history. The ALJ determined that the "clinical signs and findings are inconsistent with more than moderate psychological limitations" and that Plaintiff's "conservative treatment history is inconsistent with disabling mental impairment." (Tr. at 20.) Additionally, the ALJ found that Plaintiff's daily activities were inconsistent with a disabling mental impairment. (Tr. at 21.) The ALJ's determination regarding Plaintiff's limitations and his credibility is supported by substantial evidence. *See Bainbridge v. Colvin*, 618 F. App'x 384, 388 (10th Cir. 2015); *see also Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007) (ALJ's credibility findings deserve special deference). Moreover, with regard to Plaintiff's alleged limitations in his daily activities, the ALJ's findings are supported by the record. The court may not "displace the agency's choice between two fairly conflicting views...." *Lax*, 489 F.3d at 1084 (citations, quotations, and bracket omitted).

### iv.    Dr. McMaster

Plaintiff argues that the ALJ failed to acknowledge that the state agency consultant, Dr. McMaster, opined that Plaintiff had a "markedly limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Doc. 8 at 30.) Plaintiff asserts that this finding precludes all work.

In reviewing the evaluation form, the portion at issue is titled "MENTAL RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT." (Tr. at 72.) The first part is titled "MRFC1." It includes several questions which are described as follows: "The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation…Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box." (Tr. at 72-73.)[4] The section at issue states "Rate the individual's sustained concentration and persistence limitations." (Tr. at 73.) Dr. McMaster completed the form as follows:

> The ability to carry out very short and simple instructions.
>     Not significantly limited
> The ability to carry out detailed instructions.
>     Moderately limited
> The ability to maintain attention and concentration for extended periods.
>     Moderately limited
> ***
> The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
>     Markedly limited
>     Explain in narrative form the sustained concentration and persistence capacities and/or limitations:
>     Clmt [sic] is capable of, at least, 1-2 step instruction.

(Tr. at 73.)

In response to Plaintiff's argument that the ALJ failed to address the limitation, the Commissioner states that the ALJ did not err because the ALJ adopted the "actual restrictions the State agency psychologist identified." (Doc. 11 at 10.) The Commissioner does not spend a

---

[4] There is not a box called "MRFC - Additional Explanation text box" on this form. This may be because Dr. McMaster did not include text in the box.

13

significant amount of time addressing this issue. The Commissioner's position is construed to be that the narrative limitation accounted for all the limitations that were noted in the section regarding sustained concentration and persistence limitations. The court disagrees.

The Program Operations Manual System ("POMS") provides direction to SSA employees. In a note to its description of the "markedly limited" checkbox regarding a mental limitation, the POMS states that this choice "should be selected when the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity." POMS DI 24510.063. The limitation identified by Dr. McMaster was the ability to complete a workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. By checking that Plaintiff was markedly limited in this area, Dr. McMaster indicated that Plaintiff could not complete a workday or workweek without interruption and would need an unreasonable number and length of rest periods. The Commissioner makes no attempt to explain how this limitation was accounted for in the narrative. The limitation of one to two step instructions does not address work interruption from psychologically based symptoms or taking excessive breaks. Rather, this narrative is likely applicable to Dr. McMaster's indication of moderate limitations for carrying out detailed instructions.

The Commissioner offers no other argument as to why the court should reject Plaintiff's argument that the ALJ failed to consider this limitation noted by Dr. McMaster. Although the court agrees that the RFC would encompass the restriction that is included in the narrative, the ALJ has not addressed the marked limitation found by Dr. McMaster. Moreover, although not raised by Plaintiff, the record shows that the other consultant, Dr. Frantz, also opined that Plaintiff was markedly limited in this area. (Tr. at 89.)

Notably, the opinions of Dr. McMaster and Dr. Frantz were the only opinions that the ALJ found to be persuasive. The ALJ, however, did not discuss this limitation. The MRFC assessment states that the questions are to determine Plaintiff's ability to perform work activities. While the form states that the "actual mental residual functional capacity assessment is recorded in the narrative," that does not mean that the ALJ can ignore the limitations contained in the questions. *See Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) ("this does not mean that an ALJ can turn a blind eye to moderate Section I limitations.")

In *Carver*, the court of appeals held that if the narrative does not describe the effect of the limitations marked or if it contradicts the limitations marked, the MRFCA "cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* As the ALJ clearly utilized the opinions of Dr. McMaster and Dr. Frantz in formulating the mental RFC, remand is necessary. *Id.* The court finds that the ALJ erred in relying on the flawed mental RFC.

Moreover, in this case, the error is not harmless. The ALJ asked the vocational expert the following during the hearing:

> Q. Hypothetical number three is going to be the same as number two [the RFC the ALJ ultimately formulated], but with the added limitation that any job must allow for occasional unscheduled disruptions of both the workday and workweek, secondary to potential occasional but frequent periods of decompensation during the workday, inability to focus or concentrate for a full eight-hours, and unreliably as far as showing up for work -- secondary to symptoms or treatment, those types of things. Would that individual be able to perform any of Mr. Wade's past work, and/or would there be any other jobs in the national or regional economy that an individual with those limitations could perform?
>
> A. There would be no work which could be performed within such limitations, your honor.

(Tr. at 56.)

Plaintiff's attorney then asked the following question of the vocational expert:

15

Q.    And, if that individual was also was unable to meet competitive standards in complete -- in performing at a consistent pace, without an unreasonable number and length of rest periods, would they be able to perform the jobs you identified or any other jobs in the national economy?

A.    They could not.

(Tr. at 58.)

Based on these questions to the vocational expert, an inability to complete a workday or workweek without interruptions and an unreasonable number of breaks would result in a finding of no available jobs in the national economy.

This matter must be remanded so that the ALJ may properly address the consultants' opinions in light of this order and the record. Upon remand, the ALJ is free to reopen the hearing if necessary. The court declines to review Plaintiff's argument regarding the treatment of the VA doctors as the ALJ may reconsider these arguments in light of this order on remand. The court also declines to consider Plaintiff's argument regarding the apparent conflict between the expert's testimony and the DOT. On remand, the ALJ may formulate a new RFC. If there are any apparent conflicts between the expert's testimony and the DOT, these must be resolved at a hearing.

### IV. Conclusion

The Commissioner's decision is REVERSED and REMANDED. The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED this 18th day of June, 2020.

                ____s/ John W. Broomes_____
                JOHN W. BROOMES
                UNITED STATES DISTRICT JUDGE